IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 10 C 1247 |
| ) | |
| RODNEY T. WILSON, ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Rodney T. Wilson's (Wilson) motion to vacate, set aside, or correct pursuant to 28 U.S.C. § 2255 (Section 2255). For the reasons stated below, we deny the Section 2255 motion.

## BACKGROUND

On May 15, 2007, a jury convicted Wilson on Count One of the indictment in criminal case number 06 CR 509 (Indictment), which charged Wilson with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On August 22, 2007, the court in the criminal action sentenced Wilson to 95 months imprisonment. Wilson appealed his sentence, and on January 5, 2009, his appeal was denied. On February 24, 2010, Wilson filed the instant Section 2255 motion seeking to vacate or set aside his sentence. On January 7, 2011, the instant action was reassigned to the

undersigned judge.

## LEGAL STANDARD

Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." *Id.* The relief sought in a Section 2255 motion "is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

## DISCUSSION

Wilson argues that he was denied effective assistance of counsel at trial. Wilson contends that his trial counsel erred by: (1) not seeking the dismissal of the Indictment after receiving an affidavit from defense witness Terrance Whitehead (Whitehead), (2) improperly impeaching Whitehead, (3) failing to investigate whether Wilson made a statement to a Cook County Assistant State's Attorney (ASA), (4) failing to obtain recordings of police radio transmissions regarding

Wilson's background, (5) failing to cross-examine the Government's witness, Shirley Coleman (Coleman), regarding whether she was coerced into cooperating with the Government, and (6) failing to submit Coleman's affidavit to the appellate court.

In order for a petitioner to show that his counsel was ineffective, the "petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense." *Johnson v. Thurmer*, 624 F.3d 786, 791 (7th Cir. 2010)(citing *Strickland v. Washington*, 466 U.S. 668, 689-92 (1984)). There is a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Ward v. Jenkins*, 613 F.3d 692, 699 (7th Cir. 2010)(quoting *Strickland*, 466 U.S. at 689); *see also Johnson*, 624 F.3d at 791 (stating that there is an "assumption that [petitioner's] counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'" and "[t]o establish deficient performance in spite of that assumption, [the petitioner] must show that counsel's representation 'fell below an objective standard of reasonableness' based on prevailing norms of professional conduct")(quoting *Strickland*, 466 U.S. at 688-90). In order to establish prejudice by ineffective assistance of counsel, the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Johnson*, 624 F.3d at 791 (quoting

*Strickland*, 466 U.S. at 694).

I. Moving for Dismissal of Indictment

Wilson contends that his counsel should have moved to dismiss the Indictment when his counsel allegedly received an affidavit from Whitehead (Whitehead Affidavit), in which Whitehead purportedly swore to certain facts on November 8, 2006. Wilson has provided a copy of the Whitehead Affidavit with his Section 2255 motion. Wilson claims that Whitehead provided Wilson's counsel with the Whitehead Affidavit "six months before trial," that Wilson "discussed how to proceed with the affidavit numerous times," and that Wilson asked his counsel to move to dismiss the Indictment based on the Whitehead Affidavit. (Mot. 4).

The Government has cited to portions of the trial transcript that the Government contends show that Whitehead testified during his cross-examination that he sent an affidavit to Wilson's mother that was supposed to be given to Wilson's counsel. (Tr. 503-04). The Government indicates that Wilson's counsel denied in open court that he ever received the Whitehead Affidavit and that Wilson's counsel later signed a stipulation (Stipulation), which was admitted at Wilson's trial, agreeing that Wilson's counsel never received any correspondence or affidavit from Whitehead. Wilson has not presented evidence to call into question the validity of

that Stipulation. The Stipulation also bears Wilson's signature. Wilson has not explained why his signature is on the Stipulation, if he believed at that time that his counsel had received the Whitehead Affidavit prior to trial, and he had, as he now claims, been previously discussing the Whitehead Affidavit with his counsel.

In addition, even if Wilson's counsel had received the Whitehead Affidavit prior to Wilson's trial, the affidavit would not have provided Wilson's counsel with a good faith basis to move to dismiss the Indictment since "'[c]hallenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence.'" *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009)(quoting *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006)). The fact that Whitehead may have presented some allegations that contradicted the evidence presented by the Government at trial merely would have pointed out a conflict to be resolved by the jury. It did not provide a valid basis to dismiss the Indictment. Thus, Wilson's counsel was not ineffective for not moving to dismiss the Indictment.

II. Impeachment of Whitehead

Wilson also argues that his counsel improperly impeached Whitehead, the defense's key witness. As indicated above, the Government has pointed to portions

of the trial transcript that indicate that during Wilson's trial, Whitehead testified that he had sent an affidavit to Wilson's mother and that it was supposed to have been given to Wilson's counsel. (Tr. 503-04). Wilson's counsel denied ever receiving the Whitehead Affidavit and signed the Stipulation. Wilson contends that in doing so, his counsel participated in the impeachment of a defense witness. However, Wilson has not shown that his counsel was untruthful in signing the Stipulation. Nor did the Stipulation have a significant impeachment value in regard to Whitehead's testimony. Whitehead claimed to have given the Whitehead Affidavit to Wilson's mother. The Stipulation does not show Whitehead's statement to be false. The fact that Wilson's counsel may not have received the affidavit merely indicates that Wilson's mother did not forward the Whitehead Affidavit to Wilson's counsel. Thus, Wilson has not shown that his counsel improperly impeached Whitehead.

III. Investigation of Statement Allegedly Made to ASA

Wilson argues that his counsel improperly failed to contact or interview a certain ASA. Wilson claims that he made statements to the ASA and that the statements conflicted with those that police officers claimed that Wilson made to them. Wilson's motion is deficient, since he fails to point out the specific conflicts that he alludes to in his instant motion. (Mot. 4-5). When a petitioner is contending

that his counsel failed to sufficiently investigate a matter, the petitioner "must provide 'the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004)(quoting *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003)). In the instant action, Wilson's vague assertion that there was a "conflict" between the statements that he made to the ASA and the statements that the officers claimed to have heard is not sufficient to meet his burden as the movant. (Mot. 4). In addition, the decision of what investigation is prudent is generally left to the discretion of trial counsel. *See Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003)(stating that "'[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments'")(quoting *Strickland*, 466 U.S. at 690-91). Wilson has not shown that his counsel's decision not to contact the ASA was beyond the scope of a reasonably prudent counsel. Nor has Wilson shown that he was prejudiced by the fact that the ASA was not contacted by his counsel. Thus, Wilson has not shown that his counsel was ineffective because he decided not to contact the ASA.

IV. Police Radio Transmissions

Wilson argues that his counsel was ineffective, since he did not attempt to obtain the arresting officers' (Officers) radio transmissions (Transmissions) made at the time of Wilson's arrest. Wilson argues that the Transmissions showed that the Officers were aware of Wilson's criminal history, gang affiliation, and recent release from prison. Wilson contends that his counsel could have used the Transmissions to impeach one of the Officers when he testified at trial that, at the time of the arrest, he did not have knowledge about Wilson's criminal history, gang affiliation, and recent release from prison. Wilson's motion on this point is deficient in that he fails to articulate what exactly was in the Transmissions to indicate that the Officer possessed the information in question. In addition, the decision by Wilson's counsel not to plan to impeach the Officer on such a point was well within the scope of sound trial strategy. *See McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009)(stating that "[s]trategic choices are 'virtually unchallengeable'")(quoting *Strickland*, 466 U.S. at 690). In fact, the Government has pointed to portions of the trial transcript that indicate that Wilson's counsel properly filed a motion in limine and made objections at trial, seeking to bar any reference to Wilson's gang affiliation and recent release from prison. It was a reasonable trial strategy to avoid references to such matters and it was reasonable for Wilson's counsel to conclude that the prejudicial effect to

8

Wilson by the introduction of such information would far outweigh the impeachment value of the Transmissions. Thus, Wilson has not shown that his counsel was ineffective because he decided not to obtain the Transmissions.

V. Impeachment of Coleman

Wilson contends that his counsel failed to properly impeach Coleman at trial. Coleman was called to testify at trial through a Government subpoena. The Government has pointed to portions of the trial transcript that indicate that Coleman was a retired woman who knew Wilson's mother for 34 to 35 years. It was well within Wilson's trial counsel's sound discretion to decide not to alienate the jury by attacking Coleman on the stand with questions indicating that Coleman was lying on the stand. The Government has pointed to questions that Wilson's counsel asked Coleman on cross-examination that resulted in answers that were beneficial to Wilson's defense. (Ans. 13). Thus, Wilson has not shown that his counsel improperly failed to impeach Coleman.

VI. Coleman Affidavit

Wilson also argues that his counsel was ineffective for failing to present to the Appellate Court hearing Wilson's appeal an affidavit purportedly executed by

Coleman (Coleman Affidavit), in which she claims that she testified under duress at trial. The Government has pointed to portions of the record that reflect that the issue was raised during the direct testimony of Coleman. The Government indicates that Coleman stated that she did not want to testify and was only doing so because she was subpoenaed. (Ans. 13 n.8). Thus, the appellate court already had the record indicating that Coleman was forced to testify because of the receipt of a subpoena. In addition, the Coleman Affidavit was allegedly executed after Wilson's trial. It was not a part of the record before the district court. Wilson has not shown that his counsel was ineffective when he decided not to submit the Coleman Affidavit to the Appellate Court. Nor has Wilson shown that his appeal was prejudiced by the absence of the Coleman Affidavit in the appellate record. Based on the above, we deny the Section 2255 motion.

## CONCLUSION

Based on the foregoing analysis, we deny the Section 2255 motion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 1, 2011